## NORTON et al. v. WHEATON.

(Circuit Court, N. D. California. October 30, 1899.)

No. 12,135.

**1. PATENTS—INFRINGEMENT—COMBINATIONS.**

To constitute an infringement of a patent for a combination of mechan-·
ical powers in a machine, the elements of which are not separately claimed
as the invention of the patentee, the infringing machine must substan-
tially use all the elements of the combination.

**2. SAME—CAN-HEADING MACHINES.**

The Jordan patent, No. 307,197, for improvements in can-ending ma-
chines, is not for a pioneer invention either of a machine for heading cans
or as to the appliances brought together in the mechanism of the machine
described, and its claims cover only the exact union of the exact elements
of the device shown. It is not infringed by machines made in accordance
with the Wheaton patents, Nos. 477,584 or 499,949,—the latter being for
improvements on the former,—as such machines, while performing the
same functions as the Jordan machine, do so by entirely different mech-
anism, in which the principal elements of the combination shown by the
Jordan patent are not used.

This was a suit in equity by Edwin and Oliver W. Norton against
Milton A. Wheaton for infringement of a patent.

John H. Miller, for complainants.

Wheaton & Kalloch (I. M. Kalloch, of counsel), for respondent.

MORROW, Circuit Judge. This is an action for infringement of
United States letters patent No. 307,197, bearing date of October 28,
1884, and granted to Edmund Jordan, for certain improvements in
can-ending machines. A copy of the specifications and drawings of
the patent is attached to and made part of the bill of complaint, as
Exhibit A. Complainants are the owners of said letters patent.
The bill alleges that respondent has made and sold can-heading ma-
chines made as described in United States letters patent No. 477,584,
bearing date June 21, 1892, and No. 499,949, bearing date June 20,
1893, and that these machines are infringements upon complainants'
patent. The amended answer denies that the patentee, Jordan, was
the original inventor of any improvement in can-heading machines;
alleges that Jordan's machine was impracticable, and incapable of
performing the operation of heading cans; denies infringement;
admits that respondent has made and sold two machines as described
in patent No. 477,584, and one as described in patent No. 499,949;
sets up an adjudication in an action of the United States circuit
court of appeals for the Ninth circuit on or about March 10, 1892, in
which Edwin Norton and Oliver W. Norton, the complainants herein,
were complainants, and Mathias Jensen and John Fox were re-
spondents, this action being brought for an alleged infringement by
the respondents of complainants' letters patent No. 274,197, and
avers that the said court of appeals decided that the said letters pat-
ent were invalid and void, and that the machine described therein
was "not a practicable machine for putting heads on tin cans"; avers
that this adjudication of the court of appeals is binding, and that com-
plainants are now estopped from claiming that the Jordan patent

is a valid patent; sets up as anticipations of complainants' patent United States letters patent No. 152,757, bearing date July 7, 1874, and granted to George A. Marsh, for an improvement in devices for heading cans; United States letters patent No. 238,351, bearing date March 1, 1881, and granted to William J. Clark, assignor to Charles E. Hull and Jonathan Q. Rand, for a can-heading machine; United States letters patent No. 265,617, bearing date October 10, 1882, granted to George A. Marsh, for a machine for heading cans.

Letters patent No. 307,197, for the infringement of which complainants have commenced this suit, were granted to Edmund Jordan on October 28, 1884. The invention for which this patent was granted is described in the specification as "an improvement in can-ending machines for automatically putting the ends of sheet-metal cans onto the bodies," and more fully stated to be "an appliance devised to perform the following operations: First, to pick up and retain a can end; second, to grasp and hold the body of a can in a proper position; third, to force the end on the body; fourth, to release the end and body when these operations are completed." The specification further states:

"My invention relates generally to the class of mechanism adapted for putting the ends of sheet-metal cans on the bodies, and more specifically to the subdivision of such class which employs a method of grasping and holding the body of the can in position while the end is forced on. At present, my invention relates to and is employed in the machine the features of which are fully shown in the accompanying drawings and described in this specification, but is adapted to and can be operated in a press or machine of any suitable construction. * * * The mechanism employed in the machine herein described and shown consists, generally speaking, in a vertically-moving and horizontally-swinging arm, carrying a segmental spring clamp chuck adapted to pick up and carry a can end to a body, then center and hold the body firmly, and force the end on the body, afterwards releasing both end and body of the can, in combination with the intermittently-rotating disks provided with chucks, on one of which disks the can ends, and on the other the bodies of the cans, are placed, to be operated upon by the segmental spring clamp chuck."

The first two claims of this patent are as follows:

"(1) In a machine for automatically putting the ends of sheet-metal cans on the bodies, a segmental clamp chuck, and mounted to be capable of performing the following operations: First, to receive and retain a can end; second, to grasp and hold the body of the can in a proper position; third, to force the end of the can on the body of the same; fourth, to release the end and body of the can when these operations are completed,—combined with suitable means for actuating the same to effect these operations. (2) In a machine for automatically putting the ends of sheet-metal cans on the bodies of the same, a vertically-moving and horizontally-swinging arm, in combination with a segmental spring clamp chuck mounted to be capable of performing the following operations: First, to receive and retain a can end; second, to grasp and hold the body of the can in a proper position; third, to force the end of the can on the body; fourth, to release the end and body of the can when these operations are completed,—and suitable means for actuating the same to effect these operations."

The segmental spring clamp chuck consists of a number of segments or jaws. The drawings of the patent show six of these jaws, but the number does not appear to be material, except that there must be two, and there may be more. These segments or jaws are circularly arranged, and so connected or pivoted as to be movable

outwardly from the center of the chuck, presenting internally a funnel-shaped cavity or mouth with an annular space or seat at the top or inner end for the reception of the can head. This annular space is of the exact circumference of the can head, while the smallest circumference of the funnel-shaped mouth of the chuck is exactly that of the can body, sized and shaped to enter the can head. The segments of the chuck are encircled with a metal ring held in position by a latch. This latch is connected with a spring so arranged that the latch will be released at the proper time, and the ring allowed to make a partial rotation when so released from the latch, and this will cause the segmental jaws to expand. A reverse motion of the ring, produced by appropriate mechanism, causes the jaws to close. This chuck is mounted upon a radial arm, marked "A" in the patent, and this arm is attached to the frame of the machine, so as to be capable of an arc-shaped motion around its point of attachment. For feeding the cans and heads, or assembling them in such relations as to each other as to be convenient for the purpose of heading, two rotating tables are provided, so located with reference to the chuck arm that when the chuck describes its arc-shaped motion the heads and bodies of the cans being carried around may be concentric with the center of the chuck. Besides the arc-shaped motion of the chuck, a motion transverse to this arc motion is provided for, for forcing the head upon the can body. To operate the machine, the heads are placed upon the projections of one of the feed tables, called also "disks," and the bodies are placed in the depressions of the other. By the rotation of the feed table the head is brought into a position where it may be grasped by the open chuck, whereupon the chuck closes upon the head, and transfers the head to the body by its arc-shaped motion, the body having been brought into a proper position for receiving it by the revolution of the table in a depression of which it is placed. Now by a transverse motion of the chuck, the head is forced onto the body, the chuck being of such a form as to guide the body into the interior of the head. The chuck now opens automatically, and the headed can is dropped.

Respondent has taken out two patents for a can-heading machine. The former of these—No. 477,584—is dated June 21, 1892. Respondent calls his invention "an improvement in can-heading machines." The latter patent—No. 499,949—is dated June 20, 1893, and consists of certain improvements upon the former machine. These machines, complainants maintain, infringe claims 1 and 2 of patent No. 307,197. Respondent's machine for which patent No. 477,584 was issued may be described as follows: It consists of a revolving shaft, on which are two perforated disks. Through the perforations of the disks pass rods, and 10 sets of jaws are attached to these rods towards each end of the revolving mechanism. Ten other sets of jaws are placed opposite to these on the same rods. There is a mechanism by means of which these sets of jaws are drawn towards each other, and thus are enabled to put the heads on the can bodies. There are chutes connected with the upper portion of the machine for the purpose of feeding can bodies and can heads to the sets of jaws. As each

double set of jaws comes underneath the chutes, the upper half of each pair of jaws opens, so as to receive the can body into the lower half of the same pair of jaws. Simultaneously with the descent of the can body a can head descends at each end of the can body into the same lower jaw, there being a recess in the extreme back end of each jaw, made for the purpose of receiving the can head. As the shaft revolves, and, consequently, the disks attached to it, the upper jaws are forced forward, and fall, so as to close upon the can heads and the ends of the can body. When the jaws are thus closed, a conical-shaped opening is formed, in which rest the ends of the can bodies. The revolution of the shaft, combined with a certain mechanism, drives the two sets of jaws towards each other, forward, and the conical shape of the jaws compels the ends of the can bodies to enter the heads, resting in the recesses of the back of the jaws, thus putting the heads upon the can body. The further revolution of the shaft, together with that of the disks and jaws, continues, and, as the bottom of the machine is reached, the former upper half jaw becomes the lower half. The jaw opens, and the headed can drops out. There is no stopping of the disks and jaws, which proceed continuously around the shaft. According to the evidence this machine is capable of heading about 10,000 cans per hour, or 100,000 cans in a day of 10 hours. The invention for which letters patent No. 499,949 were issued consists of certain improvements upon the foregoing machine. These improvements are thus described in the specifications dated June 20, 1893:

"My machine, as changed by the improvements herein described, differs from the machine as described in my said patent of June 21, 1892, by so altering the jaws and changing the movements that the can bodies are first received into the open jaws, after which the jaws are closed before the can heads are admitted into them. After the jaws are closed, each one of the can heads is admitted to the jaws through a slot, which is made through the jaw end, which opens and closes. In my original machine the can bodies and can heads were admitted to the jaws simultaneously, and while the jaws were open. In my present improvements the jaws only revolve one-quarter of a revolution in opening, while in my original machine they revolved one-half of a revolution. In my present improvement the upper jaws, in opening, do not move toward or come in contact with each other, as they would do if they were opened simultaneously in my original machine, and consequently a shorter can may be headed in my improved machine than could be headed in my machine as originally patented."

These two machines of respondent may be considered as one, in regard to the infringement by them, or either of them, of claims 1 and 2 of complainants' patent, for, as regards such infringement, they are practically the same machine. There are very obvious differences, both in form and structure, between the complainants' and respondent's machines. The Wheaton patent puts both ends upon the can simultaneously; the Jordan patent merely heads. Instead of one segmental chuck, the Wheaton patent has 10 pairs of jaws. There is a complete dissimilarity in the feeding apparatus; the Wheaton patent being fed by chutes, and the Jordan patent by hand. The witness Smyth testified that the Jordan machine might be fed by means of a chute, but it did not appear

that this was the method employed in feeding it. The Wheaton chuck is opened before and closed after receiving the can and the head by a mechanism differing entirely from that in the Jordan patent. In the former the jaw, consisting of two halves, is completely thrown open; in the latter the exterior ring is so manipulated as to widen the orifice of the chuck sufficiently to allow the can to escape. The Wheaton machine, in operation, is horizontal in position; the Jordan machine is vertical. While admitting these differences and dissimilarities, complainants maintain that claims 1 and 2 of their patent are still infringed, and that the "jaws" of respondent's machine, are but modifications and variations of the mechanism of complainants' "segmental clamp chuck." To determine this feature of the controversy, it is necessary to clearly understand the device or improvement for which a patent was granted to Jordan. The claims of the patent are what are known in the patent law as "combination claims," consisting in this case of two elements; one, a segmental clamp chuck mounted to perform certain functions specified in the claims, and the other a mechanism or suitable means for actuating the chuck to perform such functions. Both of these elements contribute to the single purpose of producing a can-ending machine which employs a method of grasping and holding the body of the can in a position while the can head is being forced upon the can body. The invention consists in the idea of the means which is in itself indivisible and acts as an entirety, and this idea of a means culminates in this patent in the machine by which the ultimate effect is produced, and not in the segmental clamp chuck, which, although an important agency, is nevertheless but one of the two elements constituting the mechanism required to complete the operation of forcing a can head upon a can body. If Jordan was the original inventor of the segmental clamp chuck (which, however, does not appear), he was entitled to claim it separately as his invention, even though it lacked utility except as a portion of the principal invention; but such a claim, to be effective for this purpose, must specifically point out the new element as an invention, that constructors and inventors may know what has been withdrawn from general use. Seymour v. Osborne, 11 Wall. 516, 541. This Jordan did not do in either of the claims of the patent now before the court,—probably because he was not entitled to make such a claim. The complainants are, therefore, left to sustain their case by showing that the respondent has infringed the combined mechanism constituting the can-ending machine described in their patent. Has that charge been sustained? The two machines accomplish certain similar results, but by very different mechanisms. Respondent's machine does its work much more rapidly than that of the complainants, and its rapidity and effectiveness depend, not merely upon the multiplication of the jaws, but also upon the design of the machine, which enables it to run in one constant direction. In complainants' machine the can head is first picked up by the clamp chuck, and carried to a point where it is in line with the can body. At the same time the can body has been carried

by a revolving disk to a place where it is in line with the can head. Here the forward motion of both carriers is necessarily brought to a stop, and another and a transverse motion comes into play, by which the can head is forced upon the can body. When this operation is completed, the carrier holding the headed can moves forward, and discharges the can, while the clamp chuck returns for another can head. The motions of the two carriers, although they may be continuous and rapid in movement, are clearly intermittent in action. This fact is established by the specifications of the Jordan patent, as follows:

"The mechanism employed in the machine herein described and shown consists, generally speaking, in a vertically-moving and horizontally-swinging arm carrying a segmental spring clamp chuck adapted to pick up and carry a can head to a body, then center and hold the body firmly and force the end of the body forwards, releasing both end and body of the can, in combination with two intermittently-rotating disks provided with chucks, on one of which disks the can ends, and on the other the bodies of the cans, are placed, to be operated upon by the segmental spring clamp chuck."

In respondent's machine, as constructed according to the former of his patents, the can and the body are fed into the machine simultaneously, and in the latter of respondent's two patents the can body is fed into the machine first. Complainants' patent calls for a segmental clamp chuck, with actuating machinery capable of operating it. Respondent's actuating machinery could not operate complainants' clamp chuck, neither could complainants' actuating machinery operate the jaws of respondent's machine. There is nothing in respondent's machine which answers to the "vertically-moving and horizontally-swinging arm," which, in combination with the segmental clamp chuck, forms the substance of the second claim of complainants' patent.

In Westinghouse v. Brake Co., 170 U. S. 537, 568, 18 Sup. Ct. 707, 722, the supreme court had before it the question of infringement involved in the mechanism for opening and closing certain valves in automatic air brakes. It was contended on the part of the complainant in that case that he was a pioneer inventor, and that the alleged infringing device corresponded to the very letter of the claims of complainant's patent; but it was held that even this fact was not sufficient to establish infringement. The court said:

"The patentee may bring the defendant within the letter of his claims, but, if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted when he has done nothing in conflict with its spirit and intent. 'An infringement,' says Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 572, 'involves substantial identity, whether that identity be described by the terms "same principle," same "modus operandi," or any other. * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term "equivalent."' We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional, and the defendant's device differs from that of the patentee only in form, or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after

all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there."

In the present case it is not claimed that Jordan is a pioneer inventor, but, on the contrary, it does appear that his invention is a combination of old elements. And, stopping for a moment to consider that feature of the case, what do we find? As showing the state of the art, respondent introduced in evidence the specifications and drawings of the three prior patents which he has set up in his amended answer. The first of these is patent No. 152,757, granted to G. A. Marsh, July 7, 1874, for an "improvement in devices for heading cans." The Marsh patent was for a hand machine. In this machine there is a kind of chuck, one diameter of which receives a can head, and one-half of another diameter centers the end of the can body, and guides it into the can head. Patent No. 238,351, bearing date March 1, 1881, was issued to W. J. Clark for a "can-heading machine." This machine combined "a die for holding the head with a tapering expansible gauge for truing the wall blank or can body to the exact shape of the head, be it circular, oval, square, or polygonal, and guiding it to a position within the head flange." This machine might be operated either by hand power or by foot. Patent No. 265,617, dated October 10, 1882, was issued to George A. Marsh for a "machine for heading cans." This machine had a perpendicular stanchion erected upon the base. To this stanchion were fastened two guides, each having a circular opening in the same vertical line. A shaft passed through these openings. The lower end of the shaft terminated in a piece having in its lower side a circular shoulder. On the under side of this shoulder is a circular recess, concentric with the shaft, and of a diameter just sufficiently large to admit the cover of the can to be headed. In depth it may be equal to one-half the width of the flange of the cover. Hinged to the shoulder above mentioned, and on either side of it, are two arms, semicircularly bifurcated at their inner ends, so that the arms together form a circle concentric with the recess above described. In operating this machine the shaft with its apparatus at the lower end was carried downward by a lever, and thus the head was forced upon the body of the can. These machines are termed "bench headers," from being secured to a bench when worked. They were worked by hand. The method of forcing the heads on the cans employed by the complainants' machine is like that used in the Marsh machine. To this mechanism Jordan added a swinging rod, which had a horizontal movement, and was adapted to seize the can head from the chuck on one feed table, and swing it over the can body placed in position on the other feed table.

In the case of Norton v. Jensen, 1 C. C. A. 452, 49 Fed. 859, a majority of the circuit court of appeals for the Ninth circuit say,

with regard to the Jordan machine, patent No. 307,197, at page 467, 1 C. C. A., and page 874, 49 Fed.:

"Mr. Jordan is not the inventor of the mould, or discoverer of the principle of the segmental clamp described in the specifications for his patent. His invention consists of a new use of these appliances, in combination with others to produce certain results. This is a sufficient reason for limiting the patent to the particular use mentioned in the specifications."

This opinion of the circuit court of appeals may not be binding upon the complainants in this case, but it is certainly persuasive in determining, upon substantially the same evidence, the state of the art when Jordan entered this field as an inventor. The question is, however, not left in doubt upon the evidence in this case. Jordan was not a pioneer, either in the invention of a can-heading machine or in the production of the appliances brought together in the mechanism of his invention. The claims of his patent must, therefore, be held to cover only the exact union of the exact elements of his device. It follows that, in order that respondent's combination be equivalent to that of the Jordan patent, it must not only perform the same functions, but must perform them in the same way. 1 Rob. Pat. § 254, note.

In the case of Eames v. Godfrey, 1 Wall. 78, the patent was for a combination of mechanical powers for a new and useful improvement in boot trees, and included a certain mechanism for distending the leg of the boot tree. The plaintiff did not claim that the defendant had used the same mechanism that he did for distending the leg of the boot tree, but that the defendant had used all the other parts of his combination, and that the mechanism which the defendant used, although differing in construction from that described in the patent, yet performed the same functions. Mr. Justice Davis, delivering the opinion of the court, said:

"The patent in controversy was for a combination of mechanical powers to effect a useful result, and such a patent differs essentially in its principles from one where the subject-matter is new. The law is well settled by repeated adjudications in this court and the circuit courts of the United States, that there is no infringement of a patent which claims mechanical powers in combination, unless all the parts have been substantially used. The use of a part less than the whole is no infringement. In Prouty v. Draper, 16 Pet. 341, the law is well considered. The patent there was for the combination of certain parts of a plow arranged together so as to produce a certain effect. The suit was for an infringement. The court below had charged the jury that, unless the whole combination was substantially used in the defendant's plow, it was no violation of the plaintiff's patent. Chief Justice Taney, in describing the case, said: 'None of the parts referred to are new, and none are claimed as new, nor is any portion of the combination less than the whole claimed as new, or stated to produce any given result. The end in view is proposed to be accomplished by the union of all arranged and combined together in the manner described. The use of any two of these parts only, or of two combined with a third, which is substantially different in form, or in the manner of its arrangement and connection, with the others, is, therefore, not the thing patented. It is not the same combination if it differs from it in any of its parts.'"

In the case of Gage v. Herring, 107 U. S. 640, 647, 2 Sup. Ct. 819, 825, the court says:

"It is proved, and not denied, that the apparatus in the defendant's mill is substantially like that described in the plaintiff's patent, so far as regards

the first meal chest, the fan, and the spout connecting with the fan, and also so far as regards the elevator; in short, so far as regards the cooling and drying apparatus proper, and the device for collecting and conveying the greater part of the meal, after being cooled and dried in the bolts."

And on page 648, 107 U. S., and page 826, 2 Sup. Ct.:

"The defendant's mill contains no conveyor shaft in the dust room, and no mechanism which performs the same function of removing the meal there collected. So far as the evidence shows, the meal deposited upon the floor of that room remains there until it is shoveled or swept up by manual labor. Its removal by such means affords no equivalent in the sense of the patent law for the automatic action described in the plaintiff's patent. Eames v. Godfrey, 1 Wall. 78; Murray v. Clayton, 10 Ch. App. 675, note; Clark v. Adie, Id. 667, 675, 676, and 2 App. Cas. 315."

It was accordingly held that, as the defendant had not infringed the entire combination set forth in the claims of the complainant's patent, the bill should be dismissed.

The case of Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, was a suit for the infringement of letters patent for improvements in wheeled cultivators. The respondent set up the prior state of the art as a defense. In the course of the opinion of the court, as delivered by Mr. Justice Jackson, it is said:

"We think it manifest from the prior state of the art, if the invention covered by his patent of 1879 was not anticipated, and if it has any validity, that it must be limited and confined to the specific spring device which is described in the specifications and shown in the drawings forming part of the letters patent. Being thus limited, there is clearly no infringement in the device used by the appellants or their principals, P. P. Mast & Co. The specific device described in and covered by the Wright patent could not be used in the appellants' combination. This interchangeability or noninterchangeability is an important test in determining the question of infringement."

The lack of interchangeability in the most important parts and elements of the Jordan and Wheaton machines is one of the features of this case.

In the case of Wheaton v. Norton, 17 C. C. A. 447, 70 Fed. 833, 851, the circuit court of appeals had before it the question of infringement, wherein the parties were the same as in this case. The complainants in that case, as in this, were Edwin and Oliver W. Norton, and the respondent there, as here, was M. A. Wheaton; but the patent sued upon in that case was No. 267,014, issued November 7, 1882, to Edwin Norton, for alleged improvements in machines for putting on the ends of tin cans. The machine used by the respondent was patent No. 477,584, granted June 21, 1892, and is the first of the patents involved in this case. Judge Ross, delivering the opinion of the circuit court of appeals for the Ninth circuit, said:

"Undoubtedly this mechanism of Wheaton, like that of complainant, puts tight-fitting can heads on the outside of can bodies automatically, to do which there must of necessity be mechanism for centering and bringing into exact line with each other the can body and can head, and also mechanism for shaping and sizing the can body, and also for forcing the head and body together. But the question is whether the device of Wheaton in centering and aligning the can body and can head, and in shaping and sizing the ends of the can body, and in forcing the heads and body together, uses the elements of the claim patented to Norton, or their mechanical equivalents."

The court then proceeds to make a comparison between the two can-ending machines in that case; and arrives at the conclusion that the differences between them were such that there was no infringement of the claims of the complainants' patent by the respondent's machine. The comparisons heretofore made in this case show differences of the same general character, and applying to the case at bar the principles of the cases which have been referred to, it does not appear that the device of respondent's machine infringes upon the segmental clamp chuck, which, in combination with appropriate actuating machinery, forms the basis of claim 1 of complainants' patent; nor does there appear to be any part of respondent's machine equivalent to the vertically-moving and horizontally-swinging arm, which, in combination with the aforesaid segmental clamp chuck, constitutes claim 2 of the Jordan patent. A decree will therefore be entered for the respondent, with costs.