GENERAL ELECTRIC CO. v. ALLIS-CHALMERS CO. et al.

(Circuit Court, D. New Jersey. May 26, 1909.)

1. PATENTS (§ 328*)—INFRINGEMENT—ATTACHMENT FOR MOTOR CONTROLLER.
    The Potter patent No. 671,232, for an attachment for notched quadrants, the purpose of which is to secure automatically a notch-to-notch movement of the handle of the contact-cylinder on an electric car, construed, and *held* not infringed.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 312*)—INFRINGEMENT—EVIDENCE.
    The fact that a device is within the language of a claim of a patent does not necessarily prove infringement.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.*]

In Equity. On final hearing.

L. F. H. Betts and Ramsay Hoguet, for complainant.
Thomas F. Sheridan and Clifton V. Edwards, for defendants.

CROSS, District Judge. There are two defendants in this suit, one only of which, the Allis-Chalmers Company, has been served. The bill of complaint alleges infringement of letters patent No. 671,232, for an "attachment for notched quadrants," issued to Wm. B. Potter, assignor to the General Electric Company, April 2, 1901.

The specifications define the purpose of the invention as follows:

"This invention relates to controllers for electric motors; and it is especially intended for the large controllers used in electric railway equipments. In certain types of such controllers the handle by which the contact-cylinder is rotated is provided with a spring-latch which engages with notches in a quadrant secured upon the top of the controller-casing. The latch normally engages one of the notches, and can only be disengaged to release the handle by pressing down a thumb-piece in the handle. In operating this device it is necessary to keep the thumb-piece depressed until the latch has cleared the edge of the notch, the result being that the latch is sometimes retained so long as to skip the next notch.

"The object of my invention is to positively insure a notch-to-notch movement and simplify the operation necessary to obtain this result. I accomplish this by providing a spring-actuated auxiliary support movable independently of the quadrant, so that when the latch is raised said support instantly operates to hold it in this position above the teeth of the quadrant, irrespective of the pressure on the thumb-piece, so that the handle is positively released and is free to be turned if the motorman gives only a momentary pressure on the thumb-piece."

A controller is used on street cars to regulate the speed of the motors, and consequently of the cars. As this patent has nothing to do directly with the internal mechanism of the controller, it seems unnecessary to give a detailed description of its method of operation

———

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

farther than to say that it is essential that the motorman turn the controller drum to such a point that the proper switch connections will be made. For, as the counsel for the complainant in substance says, if it should be turned too far the contact fingers and segments within the drum might be separated far enough to break their actual contact, but not far enough to prevent the formation of an arc between the contact fingers and segments which would result in seriously burning them while at the same time the current might not be efficiently carried to the motors. Hence, in order that the motorman may stop the controller handle at the proper places to make the desired switch connections, the correct positions are marked on a dial plate under the controller handle, by the use of which dial the motorman may gradually move the controller notch by notch to the indicated positions. The object of the inventor of the patent in suit was to provide a handle for the controller "that would operate automatically to insure a notch-to-notch movement." It was intended to provide a gradual movement of the controller handle, and prevent the operator from overrunning the notches and turning the power on too abruptly and suddenly or at improper places. The first claim of the patent, and the only one in issue, is as follows:

(1) "In a controller, the combination with the handle of the contact-cylinder, of a latch pivoted thereon, a notched rack coacting with said latch, and means for automatically supporting said latch when raised out of a notch, until the handle is turned to bring the latch over the next notch."

It will be seen that the claim embodies four elements in combination: The handle of the contact-cylinder, a latch pivoted thereon, a notched rack coacting with said latch, and means for automatically supporting said latch when raised out of a notch until the handle is turned to bring the latch over the next notch. The Priest patent. No. 556,862, of the prior art, shows substantially the arrangement of the patent in suit, save for what it called the supplementary rack or auxiliary quadrant. Indeed, the complainant's expert practically admits this when he says:

"I do not believe that there is any material or substantial difference between the device of the Priest patent and the device of the patent in suit, aside from auxiliary quadrant and the means for operating it."

Whatever of invention exists, therefore, in the patent in suit, must be found in the "means" referred to in the fourth element in combination with the other elements. The main contest at the argument was upon the question of infringement. The validity of the complainant's patent was not seriously controverted. With the exception of the Priest patent, the patents cited as anticipations all belong to a more or less remote art and are incapable of adjustment to a controller, and no one of them, not even that of Priest, contains the last element of claim 1, and hence does not show the combination of that claim. But the same thing is true of the defendant's device, which likewise does not contain that element, or any equivalent thereof. The claim calls for means for automatically supporting the latch when lifted out of the notch: means which, upon pressure being exerted upon a button on the controller handle by the operator, operate instantly and independ-

ently of his will. The "means" of the patent constitute devices entirely separate from the rack, while working in co-operation therewith. The rack is itself the second element of the claim, and cannot therefore be the means of the fourth element, which is an independent and additional element, and shown to be such by its separate description. The method of the patent for automatically supporting the latch is by the use of a supplementary rack or auxiliary quadrant. This, as already indicated, is not only an essential element of the claim, but is the only novel one. The patentee, while suggesting modifications and variations of the means therein referred to, nowhere attempts to get away from the auxiliary quadrant or something equivalent thereto pivoted or attached to the main quadrant. It is true that in the specifications he speaks of other and separate quadrants for series notches' each having its own spring; also of a separate spring tooth or dog pivoted on the main quadrant adjacent to each notch; and again at another place says that, while the drawings show the invention applied to a curved rack or quadrant, it can within its scope also be applied to a straight rack, if desirable; but no matter what form or variation is suggested, it is always something outside and independent of the quadrant; that is, something which, as the specifications say, can be "applied" to it. For instance, at one place it is said:

"While the drawings show the invention applied to a curved rack or quadrant, yet it is manifestly within the scope of my invention to apply it to a straight rack, should it be desired so to do."

This language conveys a decided intimation that the patentee's entire invention exists outside of the rack or quadrant, to which, moreover, it is capable of application. The defendant's device does not have any supplemental rack or quadrant to support the latch. It has but one rack, and that is like Priest's in the prior art. The latch when lifted from the rack is supported manually and not automatically; of course it has to contact with the rack at some time and place, otherwise it could not take the next notch of the rack, but it is not supported by it in the way that the latch in the patent in suit is supported by the auxiliary rack or quadrant. The claim in issue provides means for supporting the latch when raised out of a notch, which means operate automatically and immediately once the latch is raised, and that, too, without any intervening movement of the controller handle. The specifications say that, "when the latch is lifted by a momentary pressure on the thumb-piece, the instant the latch clears, the top of the auxiliary quadrant, the spring, I, throws this quadrant endwise so that its tooth, h, comes under the latch and prevents its falling." This is done, it will be noticed, automatically and not manually. The following question addressed to the defendant's expert and his answer thereto show the method of operation of the defendant's latch:

"Q. Please state exactly during what part of the operation of the controller handle the latch is out of contact with the rack in defendant's structure? A. As the handle moves to the rear, the lug at the outer end presses on the inner end of the latch and finally disengages it from the tooth. At this instant the latch is pulled forward and put into a position where it cannot enter the notch it has just left. The latch does not touch the rack at this time, but is at some distance from it. Being now in a position where

it cannot possibly enter the notch it has just left, a forward movement of the handle brings the latch in contact with the tooth, and a further forward movement of the handle brings the latch against the succeeding tooth, the whole handle having advanced by one notch."

The complainant's invention was not broadly new; it did, however, make some advance upon the art, and is entitled to a reasonable but restricted application of the doctrine of equivalents. It will be observed that the claim in issue is very broad, broad enough indeed to embrace any and all means of supporting the latch, no matter whether the means were new or old or within or without the range of equivalents. The fact, however, that the defendant's device may be within the language of the claim does not of itself prove that it is an infringement. Infringement is not a mere matter of words.

In Westinghouse v. Boyden, 170 U. S. 537, at page 568, 18 Sup. Ct. 707, at page 722, 42 L. Ed. 1136, Mr. Justice Brown in delivering the opinion of the court, said:

"But even if it be conceded that the Boyden device corresponds with the letter of the Westinghouse claims, that does not settle conclusively the question of infringement. We have repeatedly held that a charge of infringement is sometimes made out, though the letter of the claims be avoided. Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Ives v. Hamilton, 92 U. S. 426, 431, 23 L. Ed. 494; Morey v. Lockwood, 8 Wall. 230, 19 L. Ed. 339; Elizabeth v. Pavement Company, 97 U. S. 126. 137, 24 L. Ed. 1000; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, 36 L. Ed. 713. The converse is equally true. The patentee may bring the defendant within the letter of his claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted when he has done nothing in conflict with its spirit and intent. 'An infringement,' says Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 572, 17 L. Ed. 650, 'involves substantial identity, whether that identity be described by the terms, "same principle," "same modus operandi," or any other.' * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term 'equivalent.'"

See, also, Standard Computing Scale Company v. Computing Scale Company, 126 Fed. 639, 649, 61 C. C. A. 541; Norton v. Wheaton (C. C.) 97 Fed. 636, 641. If the complainant's patent had consisted in moving back the rack or quadrant when the latch was raised, and the defendant's device had merely moved forward the latch while the rack or quadrant remained stationary, the defendant would have probably infringed. There would then have appeared simply a reversal of action, and the one method would have been the equivalent of the other. But that does not adequately represent the present situation. In the claim in suit the rack is made the third element of the combination. This rack is stationary at all times, and to provide for the means of supporting the latch, which is the fourth element of the combination, there is introduced an inner and movable rack parallel to the fixed rack which performs no part of the function of the fixed rack, but is designed and intended by means of a spring to pass under and support the latch instantly after it has been raised out of the notch

by pressure imposed upon the button on the handle. This auxiliary rack the defendant has done away with, and has provided no equivalent therefor. He has utilized the fixed rack and latch of the prior art and made the latter movable, but manually supported at the very time the patent calls for automatic movement and support of the latch. The defendant has applied a different principle, and uses different means to accomplish the desired result. In view of the admitted fact that the Priest patent ties the patent in suit down to means for automatically supporting the latch, and as the defendant has ignored the means of the Potter patent and adopted other radically different means, and means working upon a different principle, I think the defendant has not infringed.

The complainant's patent has never been used to any considerable extent. Only about 50 of them were ever made, and their use was abandoned 8 or 9 years ago. On the contrary, the defendant's device has provided a successful notch-to-notch movement, and, when used normally and naturally, cannot act otherwise.

A decree will be entered dismissing the complainant's bill, with costs.