HEYL & PATTERSON, Inc., v. M. A. HANNA COAL & DOCK CO.

(District Court, W. D. Wisconsin. April 14, 1919.)

1. PATENTS ☞157(1)—CONSTRUCTION—RULE OF EQUIVALENTS.
   Where the field of a patent is important, and has presented difficulty, the primary patent should receive a liberal construction, and also a liberal range of equivalents; but even a pioneer patent is subject to the rule of equivalents.

2. PATENTS ☞246—INFRINGEMENT OF COMBINATION—OMISSION OF ELEMENT.
   Since infringement of a combination claim depends on defendant's using or vending an article having all the patented elements, failure to employ a certain element or its equivalent avoids infringement.

3. PATENTS ☞243—INFRINGEMENT—COMBINATION—IDENTITY OF MEANS, OPERATION, AND RESULT.
   Though a patent is of a primary character, entitled to liberal treatment, it is not infringed if defendant's machine lacks the identity of means and identity of operation, which must be combined with identity of result. to constitute infringement of a combination claim.

4. PATENTS ☞328—INFRINGEMENT—RAIL CLAMP FOR BRIDGES.
   The Brown and Gaines patent, No. 1,153,672, of September 14, 1915, for a rail clamp for traveling bridges, *held* not infringed by a device substantially different in the means and operation for applying the clamps.

In Equity. Suit for infringement of patent by Heyl & Patterson, Incorporated, against the M. A. Hanna Coal & Dock Company. Bill dismissed.

E. F. McCausland, of Superior, Wis., and Bakewell & Byrnes, of Pittsburgh, Pa., for plaintiff.

Lyman T. Powell, of Superior, Wis., Parkinson & Lane, of Chicago, Ill., Boyesen & Flor, of St. Paul, Minn., and Emery, Booth & Janney, of Boston, Mass., for defendant.

SANBORN, District Judge. This is an infringement suit on patent 1,153,672 of September 14, 1915, issued to Raymond E. Brown and Edward C. Gaines, for a rail clamp for traveling bridges. The chief question is one of equivalents, as the validity of the patent is not contested, though it is contended that its scope is greatly narrowed by the prior art.

Traveling bridges are used on coal docks to load and unload boats and cars, running back and forth on railway tracks to place the loading apparatus in proper position. The bridges vary in height, some being upwards of 100 feet, and, being built often on the Great Lakes, are peculiarly exposed to windstorms. The patent apparatus is designed to hold the bridge securely on the rails whenever not in use, or when a severe wind is anticipated. The bridge which was blown over, as described in Niagara Transit Co. v. Northwestern Fuel Co., 258 Fed 893, —— C. C. A. ——, was equipped with the patent rail clamp, which failed to hold in an extraordinary storm.

The claims which are in suit are:

Claim 1: "In a rail-clamping device for traveling bridges, the combination, with a frame, of an electric motor, a shaft driven thereby, weight-ap-

plied clamping devices, connections between said shaft and clamping devices, a means for operating said clamping devices by making and breaking the circuit to said motor."

Claim 2: "In a rail-clamping device for traveling bridges, the combination, with the frame, of an electric motor, a shaft driven thereby, clamping devices, a weight connected to said shaft, and means for breaking the circuit to said motor whereby said weight is lowered to apply said clamping devices, and means for raising said weight by making the circuit to said motor whereby said clamping devices are released."

In the electric wiring of the respective devices of plaintiff and defendant there is no great difference. In plaintiff's the weight is sustained by the motor running as a dynamo to create enough E. M. F. to sustain the weight in its elevated position. For this defendant substitutes a solenoid energized by the current on the line to apply a brake to the weight drum, and thus holding the weight. If this were the only substantial difference between the two there would be no question of infringement.

But in setting the clamps in the respective constructions there is marked difference in operation. In this respect Mr. Sessions thus compares the two:

"Should the rope of one of defendant's devices break, that clamp would set, regardless of the position of the other clamps. Should the rope of plaintiff's device break, the clamps would not set at all. In plaintiff's device there is a long shaft 10 extending something like 20 feet, in those devices which I have inspected, along the sill of the leg. This shaft is threaded at either end, at one end with a right-hand thread, and at the other end with a left-hand thread, engaging threaded nuts for applying and releasing the clamps. In defendant's device there is no such shaft, no element which corresponds to this shaft in its physical structure or in its functions. The nuts 13 upon the shaft are pivoted to bell-crank levers which in turn are pivoted to the frame of the sill. There is nothing of this sort in defendant's structure. That is an essential part of plaintiff's structure, in order to transmit the effect of the rotating screws of the clamps. Defendant's clamps are applied by a simple pair of toggle links. There is nothing of this sort in plaintiff's structure. The force, instead of being multiplied through the mechanical advantage of a toggle—which by the way was long known and used in rail clamps before the date of the patent in suit—plaintiff's device employs nothing but lever mechanical advantage, together with the advantage of the threaded screw. It is well known that the efficiency of screw threads is very small, consequently it is necessary that the motor in plaintiff's structure and the weight which operates the screw be made powerful; that is, that the motor must be of large capacity and the weight heavy. There are many friction joints in plaintiff's structure, which consume the effort of the motor and of the weight, making it necessary to carry a much greater weight upon the sill of the bridge leg than in defendant's structure.

"Defendant's weights are not supported by a shaft 10 which operates the clamping device. Defendant's weight is, on the contrary, directly connected to a rock shaft or fulcrum of a lever, which, when the weight descends, operates through the' toggle links which I have mentioned to set the clamps into position, where when the bridge starts to move the self-tightening feature becomes operative, and the clamps grip the rails with an enormous gripping power. In plaintiff's clamps the gripping effect upon the rails is due solely to the pressure which is applied to them by the actuating weight. In defendant's structure the clamps are set into position through the medium of a leaf spring, which is attached to one of the clamp levers. This spring is marked with the red pencil letter *S* upon the blueprints, Exhibits 21 and 39. As the weight of defendant's device descends and spreads the toggle links, which are marked 11 upon the blueprint. defendant's Exhibit 39, the springs *S* are flexed and they separate; the clamp levers 10 producing pres-

sure between the rail clamps and the rail sufficiently to raise the cam, which is marked with a red pencil letter C in the blueprint, defendant's Exhibit 21, to grip the rail upon any movement of the bridge thereafter. The weight of the defendant's device thus applies only a spring pressure to the clamping device, which of itself would not create enough friction to set the clamps to be of any practical use whatever in anchoring the bridge.

"The weight in defendant's device, after it has descended to put pressure upon the springs S, rests upon the top of the bridge sill; there being wooden buffer blocks upon the weight for this purpose. After the weight has descended to rest upon the top of the sill, it can have no further effect upon the tightening of the clamps. The toggle links 11 at this time are so nearly straight that any reaction from the clamps would not straighten them, except under very extreme conditions, which probably would not exist. A comparison of the sizes of the weights used upon plaintiff's and defendant's structures is one of the best illustrations of the fact that defendant's weight is entirely insufficient to apply the clamps for direct braking or clamping effect upon the rail. At the Northwestern Fuel Company's docks the other day I measured one of these weights, and it was something like 30 inches by 33 inches by 40 inches; making a conservative estimate of its weight it must have been between 9,000 and 10,000 pounds. Defendant's weight is about a foot in cross-section by 14 inches long, as I recall it—I did not measure it—and would weigh in the neighborhood of 400 pounds, I should estimate; the difference between 9,000 or 10,000 pounds for operating two clamps on plaintiff's structure, as compared to 800 or 900 at the most for operating two clamps on defendant's structure.

"The cable drum 27 of plaintiff's device is located upon the shaft 10, being secured to it by keys or other fastening device. This is absolutely essential, as the clamps are operated through screw thread and nut transmitting devices by the shaft. In defendant's structure there is nothing of this sort. This shaft of the patented structure could not be applied to operate defendant's weight. There is no occasion for it, and I cannot conceive how a designer could apply it to the clamping device of defendant's structure. The screw of plaintiff's device is obviously employed for the mechanical advantage it gives in applying the clamps by means of the weight and in releasing the clamps by means of the motor."

The force of both weights is increased by the fact that plaintiff's weight operates the shaft 10 on a drum of larger diameter than the shaft, and defendant's is attached to the end of an arm, giving it about four times the power of its weight.

The only vital question is whether the two devices have equivalent means and modes of operation. Plaintiff sets the clamps by a weight turning a shaft which by means of threaded ends straightens a toggle to spread the clamp arms and thus grip or pinch the rail head, and the weight continues to hold the toggle in operative position by its gravity until it is desired to disconnect the clamps. On the other hand, defendant's weight descends, and itself alone, without any shaft turning, straightens a toggle joint and brings the clamps into close relation with the rail, so that they can be pressed against it by springs. If, then, the bridge continues to move, the cam jaws of the clamps press against the rail with greatly increased force. Plaintiff strengthens the toggle by a weight, a shaft, and a screw; defendant by a weight, springs, and cams. Plaintiff's weight is always operative; defendant's out of operation as soon as it has placed the jaws in close relation to the rail head. Enormous pressure is applied to the rail head by plaintiff's weight alone as the initial force; like pressure is applied to the rail head by the springs and cams alone, the weight

merely serving to bring the clamps into position to be operated by the springs, moving bridge, and cams.

A comparison of the clamp-setting operation shows the following elements in the two constructions:

| Patented. | Defendant's. |
|---|---|
| 1. Breaking the circuit. | 1. Same. |
| 2. Driving clamp motor for brake resistance to steady weight lowering. | 2. Equivalent construction by solenoid. |
| 3. Resetting limit switch for later weight-raising operation, by means of descending weight. | 3. Equivalent construction by mechanical brake. |
| 4. Weight lowering by unwinding wire rope on shaft. | 4. Same. |
| 5. Applying clamps by a weight turning a shaft and straightening a toggle. | 5. Applying clamps by the weight straightening toggle and applying leaf springs and cam jaws. |
| 6. Locking clamps by toggle and screw ends of shaft. | 6. Locking clamps by toggle leaf springs and clamps. |
| 7. Preventing movement of bridge by continuous operation of gravity of the iron weight. | 7. Preventing movement by cam jaws. |

[1, 2] It is obvious that we have here two distinct modes of operation. Are they sufficiently different to negative infringement? Plaintiff's discovery is meritorious, and is not materially limited by the prior art, because a combination having weight-applied, power-released clamps had never before been used. The field is also an important one, it having been found extremely difficult to find any device which will hold large bridges against the enormous power of the wind. The patent should receive a liberal construction; also a liberal range of equivalents. But even a pioneer patent is subject to this rule of equivalents. Paper Bag Case, 210 U. S. 405, 415, 28 Sup. Ct. 748, 52 L. Ed. 1122. And since infringement of a combination claim depends on the defendant using or vending an article having all the patent elements, it follows that the failure to employ a single element or its equivalent avoids infringement. Eames v. Godfrey, 1 Wall. 78, 17 L. Ed. 547; Electric Signal Co. v. Hall Signal Co., 114 U. S. 87, 5 Sup. Ct. 1069, 29 L. Ed. 96; Dryfoos v. Wiese, 124 U. S. 32, 8 Sup. Ct. 354, 31 L. Ed. 362; Gordon v. Warder, 150 U. S. 47, 14 Sup. Ct. 32, 37 L. Ed. 992; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816; Standard Computing Scale Co. v. Computing Scale Co., 126 Fed. 639, 61 C. C. A. 541; Burroughs Add. M. Co. v. Felt & Tarrant Mfg. Co., 243 Fed. 861, 156 C. C. A. 373.

[3, 4] While the patent is of a primary character, entitled to liberal treatment, it is not infringed if defendant's machine "lack that identity of means and identity of operation which must be combined with identity of result to constitute infringement." Kokomo Fence Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689. The substi-

tution of mechanical means for electrical by using a solenoid, instead of a motor or dynamo to hold up the weight or to regulate its fall, is simply an equivalent or identical means and operation. But there is a substantial difference in the means and operation for applying the clamps. Plaintiff's invention should be given its full scope, but without allowing protection to different machines producing the same result.

Finding no infringement, the bill should be dismissed, with costs. Appeal allowed in open court; bond fixed at $200.