**HEYL & PATTERSON; Inc., v. M. A. HANNA COAL & DOCK CO.**

(Circuit Court of Appeals, Seventh Circuit. February 4, 1922.)

No. 2795.

Patents ☞328—1,153,672, claims 1 and 2 for rail clamps for traveling bridges, held not infringed.

 The Brown and Gaines patent, No. 1,153,672, claims 1 and 2, for rail clamps for traveling bridges, one element of which was a weight-applied clamping device, was not infringed by defendant's structure, in which the weight merely brought the clamps into operative position, and the clamping of the rail was due to the action of a cam in the case of any movement of the bridge.

Appeal from the District Court of the United States for the Western District of Wisconsin.

Suit in equity for infringement of a patent by Heyl & Patterson, Inc., against the M. A. Hanna Coal & Dock Company. From a decree dismissing the bill (257 Fed. 97), complainant appeals. Affirmed.

Clarence P. Byrnes, of Pittsburg, Pa., for appellant.

Wallace R. Lane, of Chicago, Ill., and Frederick L. Emery, of Boston, Mass., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Appellant asserts error in the dismissal for want of equity of its bill charging infringement of Brown

and Gaines patent No. 1,153,672, for "a new and useful improvement in rail clamps for traveling bridges," granted September 14, 1915, upon application filed May 6, 1912.

Such bridges are in very general use at docks for the unloading of coal from ships. They are usually large structures connected with and resting upon steel legs at either end, which in turn rest upon movable trucks, the wheels of which run upon railroad tracks upon the dock and parallel thereto, so that the bridge may, at the will of the operator, be moved along the tracks, and coal unloaded from vessels there and deposited in piles or in cars, anywhere on the dock beneath the bridge. Such a structure is more fully described in Niagara Transit Co. v. Northwestern Fuel Co., 258 Fed. 893, 169 C. C. A. 613, where there was involved a question of damage to a boat through the fall of such a bridge, during an extraordinary wind which rendered ineffectual such a clamping device as that of the patent; causing one end of the bridge to move while the other end held fast, and collapsing the bridge.

In such a structure it is very essential that when it is at rest there be adequate means for holding it firmly on the rails on which it rests, and for readily releasing the holding appliances when it is desired to move the bridge. In the prior art are many devices designed for such purpose, and prior to this patentee's entry into the field there were many such bridges, variously equipped with clamping and blocking devices to secure against movement along tracks. The bridge in question was constructed for defendants in 1906. It was then equipped with a device which, when the movement of the bridge stopped, automatically caused a descending weight to spread a toggle, which caused blocks similar to chock blocks to be interposed between the wheel and the rail, whereby further movement of the bridge would, if the blocks held, be arrested. To insure further against the slipping of the blocks there was at the edge of the block a knifelike downward projection which rested on the rails, and which, if the movement of the bridge continued, would tend to drive this into the rail and prevent further movement. While this was weight-applied and power-released, it was not in the true sense a clamping device, in that it did not grasp or clasp the rail itself as the term "clamp" would imply. It would arrest further movement of the bridge by interposing a block to the further movement of the truck wheels, rather than by holding the frame of the bridge by anchorage to the rails. In about 1914 the constructors of this bridge equipped it additionally with the alleged infringing device.

The action is upon claims 1 and 2 of the patent, which are:

1. "In a rail-clamping device for traveling bridges, the combination, with a frame, of an electric motor, a shaft driven thereby, weight-applied clamping devices, connections between said shaft and clamping devices, a means for operating said clamping devices by making and breaking the circuit to said motor."

2. "In a rail-clamping device for traveling bridges, the combination, with the frame, of an electric motor, a shaft driven thereby, clamping devices, a weight connected to said shaft, and means for breaking the circuit to said motor whereby said weight is lowered to apply said clamping devices, and means for raising said weight by making the circuit to said motor whereby said clamping devices are released."

Invalidity is not asserted, but noninfringement is relied upon.

The device of the patent is, as the claims indicate, one whereby the clamping element is applied and held by a weight. The clamping is effected by means which actually grasp or clamp the rail. It shows powerful jawlike members extending down each side of the rail. The descent of a great weight brings together the jaws with almost crushing force against either side of the rail head, the contracting and holding power being such only as is exerted by the suspended weight.

We are of the view that a clamping device operating substantially in this manner is one of the essential and indispensable elements of the patented combination. This element we find wanting in appellee's device, in that the clamping action of the jaws is not effected by the weight there employed. Appellee's weight merely brings the jaws into operative relation with the rail, and thereupon the weight rests upon the frame of the truck, of itself exerting no further appreciable influence in the gripping of the rails by the jaws. If the jaws employed by appellee were like those of the patent, the descent of the weight would not appreciably accomplish the clamping action, as the necessary lateral pressure on the sides of the rail would not thereby be secured. The weight actuates a spring which brings the jaws against the sides of the rail. But the gripping action is effected and the holding power derived by and through a sort of cam in one of the jaws, so set and adjusted that if the bridge starts to move in either direction the cam acts as a wedge between the jaw and rail head, exerting greater pressure as the bridge continues to move. Instead of the continuous pressure from the suspended weight, appellee's weight is at rest, with the jaws in such relative position with the rail that some movement of the bridge along the rails will alone exert the pressure of the jaws against the rail head. We are of opinion that this device does not respond to the element of "weight-applied clamping devices" as contemplated and required by the claims, but indicates a clamping device whose law of operation is substantially different, and patentably distinct therefrom.

For more detailed discussion we refer to the opinion of Judge A. L. Sanborn in his decision in the case in the District Court. 257 Fed. 97.

We are of opinion that the cause was correctly decided by the District Court, and its decree is affirmed.