75 U.S. 230
 19 L.Ed. 339
 8 Wall. 230
 MOREY
v.
LOCKWOOD.
 December Term, 1868
 
 1
 APPEAL from the Circuit Court for the District of Massachusetts.
 
 
 2
 Lockwood, assignee of the inventors, filed a bill in the court just named to restrain Morey and others from infringing letters patent granted to Charles H. and Herman E. Davidson, on the 31st of March, 1857, for a new and useful improved syringe; and which were surrendered and reissued on the 25th day of April, 1865, with an amended specification. The diagram below presents a sectional view of the instrument; now commonly called.
 
 
 3
 THE DAVIDSON SYRINGE.
 
 The case was this:
 
 4
 Prior to the date, when, by the inventions of Goodyear, India-rubber had become so important an agent in surgical operations, the only syringe in much use was the old metallic syringe, with a plunger, sometimes known as the pump syringe. The objections to the use of it, whether anal or vaginal, were, amongst others, that it required to be worked, if the party was at all feeble, by a second person, that it required the patient to be moved and placed in certain positions before it could be used, thus, sometimes, causing a strain; that where the parts were delicate or diseased, it was liable, even when thus used, by slipping or accidental motion, to injure them; and finally, that unless the instrument was large, when the inconvenience of it was proportionably increased, it required, in many cases, however used, to be removed, refilled, and replaced before a sufficient injection could be obtained. With the discoveries in manufacturing India-rubber, three improved forms of the instrument were made.
 
 
 5
 1. The globe syringe, composed of a simple globe or bulb of India-rubber with an inflexible pipe inserted in it. By compressing the bulb, the air was expelled and a vacuum caused. The pipe being then placed in any fluid, it flowed by the weight of the external atmosphere into the globe, from which, on the extremity of the pipe being inserted into the part to which it was designed to convey it, the fluid passed on compression of the globe by the hand. One objection, among others, to this instrument was, that it had to be removed, refilled, and replaced, if the injection required was large. The desideratum remained of a syringe which could supply itself, and which, avoiding any strain upon the patient's body, would hold the enema steadily and close to it.
 
 
 6
 In this condition of the art, so far, apparently, as was known to him, Herman E. Davidson, a physician, resident in Gloucester, Massachusetts, had been attending, prior to August, 1852, a patient, suffering from uterine cancer, and who used a globe syringe, with a rubber bulb and a single inflexible tube. Observing the inconvenience and discomfort to the patient of having to remove this instrument from the body, from time to time, in order to refill the instrument with the enema, Dr. Davidson suggested to a brother of his, Charles H. Davidson, who was a machinist, the making of a syringe which could supply itself with enema without being so removed.
 
 
 7
 Thereupon, Charles Davidson devised and made a drawing of a syringe, in which the elastic sac had but one opening, the two flexible tubes being coupled to it at that point, the enema entering the sac through one tube and being expelled through the other; a 'single-neck' syringe, and having a 'three-way connection.' The bulb was more round than oval—nearly spherical being the shape of the bulb in the syringe which the patient was then using. Dr. Davidson suggested the use of the oval form of bulb, and also, as a simpler and better mode of combining the parts, to have the two flexible tubes enter the sac at opposite sides.
 
 
 8
 In the early part of January, 1853, the Davidsons filed a caveat in the patent office, announcing that they had made certain improvements in syringes, and that they were now perfecting them prior to an application for a patent; their petition, together with the accompanying description, being dated on the 8th of January in that year. In that description, the petitioners state that their improvement consisted in using a spheroidal, cylindrical, or globular elastic sac, or bulb, to which were attached, and communicating with it, flexible tubes or pipes; to the ends of which pipes were connected valve-boxes, with suitable valves therein, so that by the alternate action of compression and expansion, the desirable quantity of injection might be administered without removing the instrument to refill it.
 
 
 9
 When application was made by the attorney of the inventors to the Commissioner of Patents, with a claim for the combination of an elastic sac, with flexible tubes, terminated with suitable valve cases and valves, the whole operating together in the manner and for the purpose set forth, objection was made by the office, on the ground that they were anticipated by Messrs. Pearsall & Gilbert, who, according to an account published in the Franklin Journal, had already improved syringes by making a rubber sac with two tubes coupled to it at one point. The diagram, which the Franklin Journal presented, was thus:
 
 
 10
 And the commissioner refused to grant the patent, except with a claim, thus—the clause in italics, 'when the sac, tubes, and valve-boxes are in, or nearly in, the axial line,' being particularly insisted on:
 
 
 11
 'What we claim as new, and desire to secure, &c., is the combination of the prolate spheroidal shaped elastic sac with flexible tubes, terminating in valve-boxes, containing valves, arranged for the purpose of eduction and ejection, when the sac tubes and valve-boxes are in or nearly in the same axial line, the whole operating together substantially in the manner and for the purpose set forth.'
 
 
 12
 The specification in this form was supposed to have taken the improvement out of the objection of the prior one by Pearsall & Gilbert.
 
 
 13
 In May, 1856, the Davidsons acquiesced in the rejection, and submitting an amended and restricted claim, the patent was granted.
 
 
 14
 The original specification described the improvement, in substance,
 
 
 15
 'To consist of an oval, or spheroidal elastic bulb, with flexible tubes and metallic valve-boxes, containing valves arranged for the purpose of eduction and ejection, when the elastic tubes and metallic valve-boxes were attached to such an elastic bulb in, or nearly in, its greatest axial line. The bulb and flexible tubes are composed of India-rubber, or of any suitable material of sufficient elasticity and flexibility, as is necessary, and required by the patentee in the use or operation of the instrument.'
 
 
 16
 The specimens exhibited were all made of India-rubber.
 
 
 17
 The mode of operation of the instrument was described as follows:
 
 
 18
 'Immerse the end of the eduction pipe in the enema, compress the bulb with the hand, which will expel the air from within, then releasing the grasp, the bulb will recover its form by means of its elasticity, and the partial vacuum will be filled with the enema; then insert the injection pipe, and repeat the operation of compressing the bulb until the required quantity of the enema is administered.'
 
 
 19
 Having described the invention, what the inventors claimed as new, were the matters already mentioned as the ones thought proper by the commissioner to be so claimed, to wit:
 
 
 20
 'The combination of the prolate spheroidal-shaped elastic sac, with flexible tubes, terminating in valve-boxes containing valves, arranged for the purpose of eduction and ejection, when the sac, tubes, and valve-boxes are in, or nearly in, the axial line, the whole operating together, substantially in the manner and for the purposes set forth.'
 
 
 21
 Subsequently to this grant of this patent, it was discovered by the patentees, or their assignee, and also by the commissioner himself, that the invention of Messrs. Pearsall & Gilbert furnished no legal objection to the claim of the Davidsons, as first presented to the office; for, although the prior improvement had a rubber sac, the tubes were metal and inflexible. Accordingly, on a surrender by the assignee he was allowed to amend the claim by restoring it to its original form, and the office granted a reissue with the claim in that form.
 
 
 22
 The amended specification was substantially the same as the original, leaving out that part which described the bulb, or sac, tubes, and valve-boxes, attached and so arranged as to be 'in, or nearly in, its greatest axial line.' As respected the claim, it was as follows:
 
 
 23
 'What is claimed as the invention of Charles H. and Herman E. Davidson, is a syringe, having an elastic bulb or chamber, flexible tubes, and a suitable valvular arrangement, when organized, so as to operate substantially as described.'
 
 
 24
 This claim, it will be observed, is the same with the one in substance made by the Davidsons, and refused by the commissioner when the patent was applied for.
 
 
 25
 By the 13th section of the Patent Act of 1836 a surrender and an amended specification may be made when the patent issued is inoperative, or invalid, by reason of a defective or insufficient description or specification; or, 'if the error has, or shall have arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention.'
 
 
 26
 The invention which the bill sought to enjoin was one known as
 
 
 27
 THE RICHARDSON SYRINGE.
 
 
 28
 The instrument had the same parts and materials as the one made by the Davidsons; but instead of arranging them in an axial line, the bulb or sac was placed above the point of delivery and discharge of the enema, extending its 'single neck' (which was of course hollow), so that the tubes might connect with each side of it. The difference between it and the instrument of the patentee was, that in the latter, in the axial line, tubes connected with the ends of the bulb; in the former they connected, not with the ends of the bulb but with the sides of its hollow neck. The enema passed from the eduction pipe through the neck or throat into the bulb, and was forced through the discharge pipe by the same means as those used by the patentees.
 
 
 29
 The chief ground on which the defendants resisted the invention were:
 
 
 30
 First. That the claim was broader than the invention.
 
 
 31
 Secondly. No infringement, want of originality, setting up here as the same in principle certain other syringes confessedly of prior date, as:
 
 
 32
 1. THE MAW SYRINGE.
 
 
 33
 This it was admitted was a large step from the globe syringe towards that of Davidson. It was composed of an India-rubber chamber, in form cylindrical, with metallic rims or casings at the ends. From these casings there proceeded a metallic tube of about one-third the diameter of the metallic casings, upon which tubes the inner end of flexible pipes, for eduction and injection, were drawn. Appropriate valves were placed within these small metallic tubes. The mode of using was meant to be the same as in the Davidson syringe. But the difficulty was that the metallic heads, which formed a material part of the inclosure, being rigid, counteracted, by their connection with the elastic part of the chamber, the patient's effort to compress it. Accordingly the patient, if a female, or otherwise feeble, could not well compress it, and even when the party using it was not feeble, the strength required to compress the chamber was so considerable that no one cared to use it. Practically it proved of no value. Very few were ever sold. The Davidson syringe on the other hand came into nearly universal use at once.
 
 
 34
 2. THE THIERS SYRINGE.
 
 
 35
 This was an instrument of French manufacture. It had two flexible tubes, with suitable valves, but it did not have an elastic bulb or chamber, in form at least, like that shown in the patent. A diagram of it is below.
 
 
 36
 1. It was not made of elastic material, but of a metal base plate and a rubber hood set upon it; the rubber hood forming one substantial part of the chamber to be collapsed, and the metal base plate forming the other substantial part thereof.
 
 
 37
 2. The chamber was not expanded by the elasticity of the material, but by means, wholly or partly, of a metal spring placed within the chamber.
 
 
 38
 3. The necessary prolongation of the flow of the pressure after the collapsing of the chamber had ceased was accomplished, not by the reaction of the chamber alone, as in the Davidson instrument, but by that and an air-chamber acting in connection with it.
 
 
 39
 These Thiers syringes were imported to and sold in this country in small numbers until about the time of the introduction of the Davidson syringes, and soon after that disappeared from the market.
 
 
 40
 In addition to these were numerous syringes, known as the Galante, the Phelps, the Johnson, the Hernstein, the Leroy, the Feuchtwanger, and others, some of which had had a certain sale and others none; all were displaced by Davidson's. Much evidence was taken on the one part to show their priority to that of Davidson, and on the other to disprove it; but no priority was sufficiently shown.
 
 
 41
 The court below decreed an injunction, and from the decree this appeal came.
 
 
 42
 
 Messrs. H. F. French and G. S. Boutwell, for the appellants:
 
 
 
 43
 The original patent was neither 'inoperative nor invalid,' nor was the specification 'defective or insufficient.' The case, therefore, does not fall within the 13th section of the act of 1836, and the reissue was, therefore, without authority of law.*
 
 
 44
 The claim in the reissued patent is broader than the invention, and, consequently, is void. If the fair construction of the reissue claim includes any syringe of which the Davidsons were not the original and first inventors, then the claim is broader than the invention, and so is void. Now, a fair construction includes both the Maw and the Thiers syringe; both of them old, known, and used. Can any other construction be supported? By striking out the words 'or chamber,' and giving a very literal meaning to the word 'bulb,' we may, indeed, make a distinction. We may say the Maw syringe has everything else, but it has not a bulb. Even this, however, cannot fairly be said of the Thiers syringe, for it has an elastic bulb. But those words cannot be stricken out. The surrender for reissue was for the very purpose of inserting them. The original claim describes a bulb in the words 'prolate spheroidal-shaped elastic sac.' The word chamber was not there. It was not in the caveat, and it was used in the reissued claim with a purpose.
 
 
 45
 It is, in no sense, a synonyme with bulb. Every bulb is a chamber, but a chamber is not necessarily a bulb. Chamber is the larger phrase, and may include bulb, but it certainly includes cylinder as well. Any inclosed space is a chamber. In the Davidson caveat, they describe their sac as spheroidal, cylindrical, or globular. The Maw syringe has everything in the Davidson syringe but the bulb. The Davidson syringe, as described in the reissue, includes every element of the Maw, including the chamber, which the Davidsons do not now pretend to have invented.
 
 
 46
 The syringe made by the appellants is a combination of old parts, substantially different from the Davidson syringe in structure and effect.
 
 
 47
 1. Our bulb is not their bulb, but different in this, that ours has but one aperture, while theirs has two apertures.
 
 
 48
 2. The arrangement, or organization, differs in this, that in ours, the fluid in the bulb is above the point of delivery, and we have gravity to aid in expelling it, while in theirs, one-half the fluid is below the centre of the bulb.
 
 
 49
 3. Ours has a three-way piece, not found in theirs, and which cannot be used with theirs.
 
 
 50
 4. Ours is so constructed as to receive other pipes for various purposes.
 
 
 51
 These differences constitute ours a different instrument, different in its combination of parts, and different in its mode of operation; more different from it than theirs was from the Maw.**
 
 
 52
 The patent is wholly void, as well for the invention claimed in the original patent, as for the broader claim found in the reissued patent, because syringes containing all that is claimed as the invention of the Davidsons, were long before their alleged invention, known and used in this country.
 
 
 53
 Messrs. B. R. Curtis and Causten Browne, contra.
 
 
 54
 1. The limitation of the claim, as found in the patent, in the form in which it is issued, was caused from actual inadvertence and mistake of the Commissioner of Patents. The Davidsons acquiesced from necessity in the commissioner's decision; but the Patent Office had a right to admit and correct its own blunder, and to grant a reissue with the claim as originally made.
 
 
 55
 2. The terms bulb, or chamber, are used as synonymous terms. Besides, the argument of the other side assumes that the invention patented, embraces any and all elastic chambers, by the intermittent compression and relaxation of which the instrument is made to operate as an injection syringe; whereas, it covers only instruments having substantially such an elastic chamber as is described.
 
 
 56
 3. The Richardson syringe is our syringe, under a less useful form. It is, in fact, the form in which Dr. Davidson first invented it, 'three-way piece and all,' a form abandoned as less simple than the one where the pipes were in an axial line. The gravity of an ounce or two of water is small; of other things sometimes injected less. But, in our form, the benefit of gravity can be obtained by turning the sac up perpendicularly.
 
 
 57
 4. The Maw syringe had two flexible tubes with suitable valves, and it had an elastic chamber, but it did not have an elastic bulb, or chamber, substantially like that shown in the patent. We need not examine particularly the construction of the elastic chamber. Whether the difference was theoretically great or small, practically, it was a very important one.
 
 
 58
 The same thing is true of the Thiers syringe, which has marked differences in the construction of the elastic chamber, particularly the metal spring to expand it, and which proved of little practical use.
 
 
 59
 Mr. Justice NELSON delivered the opinion of the court:
 
 
 60
 Several objections are taken to this reissued patent; among others, and which is the most material, that the claim is broader than the invention.
 
 
 61
 The 13th section of the act of 1836 authorizes a surrender, and an amended specification, when the patent issued is inoperative, or invalid, by reason of a defective or insufficient description or specification; or, 'if the error has, or shall have arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention.' We do not doubt that the commissioner had full authority to grant the amendment; and, under the special circumstances of the case, it would seem to have been a duty, as the inventors were led into the error by himself, as may be seen from his letter when the patent was originally granted.
 
 
 62
 The amendment was very material, as the language of the original claim tied the patentees down to a syringe, consisting of the parts mentioned, to an instrument in which they were arranged in an axial, or straight line; tying them down to the mere form of the construction, regardless of the substance and legal import of the invention. While the original specification and claim remained, it was competent for any one to evade the patent, and enjoy the substance of the improvement by a change in the mere form of the construction; that is, by an arrangement of the several parts in any form, if not in an axial or straight line. And this is what the defendants are endeavoring to accomplish, and would have accomplished, if the amendment of the claim had not been allowed.
 
 
 63
 They have constructed a syringe with the same parts and materials as used by the patentees; but, instead of arranging them in an axial line, the bulb or sac is placed above the point of delivery and discharge of the enema, extending its hollow neck so that the tubes may connect with each side of it. The only difference even in form between this and the patentees' is, that the latter, in the axial line, tubes connect with the ends of the bulb; in the former they connect, not with the ends of the bulb but with the sides of its hollow neck. The enema passes from the eduction pipe through the neck or throat into the bulb, and is forced through the discharge pipe by the same means as used by the patentees. The mode of operation is precisely the same in both instruments. The change is one of form and not of substance, and upon well-established principles of patent law, constitutes no defence to a bill for an infringement.***
 
 
 64
 As bearing upon this point it may be stated that the patentees themselves first constructed and used this form of syringe; but, becoming satisfied that the other form was the best, recommended it in their specification accordingly. They are protected, however, against the use of any form, as will be seen by the authorities referred to, that embodies substantially their ideas and mode of operation.
 
 
 65
 On the question of novelty there are two specimens of syringe produced by the defendants that are chiefly relied on as disproving it: one called the Maw syringe, and the other the Thiers. The first differs from the patentees' in this, that the cylindrical bulb, or chamber, is made so rigid both in the material and from its metallic ends, or heads, that it is not sufficiently elastic to be adapted to practical use; and for this reason it failed and went out of the market.
 
 
 66
 The Thiers syringe differed from the patentees' in this, that part of the bulb or chamber is metal, and part rubber; and the elastic portion is aided by a spring inside of the chamber. There is, also, an air-chamber attached to the delivery pipe. The whole construction and arrangement is different from the patentees', as they have dispensed with the metal portion of the bulb, the spring, and the air-chamber, and substituted a simple India-rubber bulb.
 
 
 67
 The rest of the proof on this point is conflicting, and we agree with the court below, that the weight of it is decidedly with the complainant.
 
 
 68
 DECREE AFFIRMED.
 
 
 
 *
 Burr v. Duryee, 1 Wallace, 531; Case v. Brown, 2 Ib. 320.
 
 
 **
 McCormick v. Talcott, 20 Howard, 405.
 
 
 ***
 Curtis on Patents, 260, 261, and note 2, page 264.