EDISON GENERAL ELECTRIC CO. v. CROUSE-HINDS ELECTRIC CO.

(Circuit Court, N. D. New York. July 20, 1906.)

PATENTS—INFRINGEMENT—ELECTRIC LAMP SOCKETS.

The Metzger patent, No. 489,682, for an electric lamp socket, claims 5 and 7, are valid, and although not entitled to a broad construction, as for a pioneer invention, are, on the other hand, when read in connection with the specification, not so limited as to deprive them of all benefit of the doctrine of equivalents. As so construed, *held* infringed by a structure which contains all of the elements of the claims in substantially the same combination and arrangement, and each performing the same function, although some of them differ in form. Claim 6 held void for lack of invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 372, 373.]

This is a suit in equity to restrain alleged infringement by defendant of claims 5, 6, and 7 of United States letters patent No. 489,682, dated January 10, 1893, and issued to the complainant as assignee of Amandus Metzger, and also for an accounting.

Samuel Owen Edmonds, for complainant.

Hey & Parsons, for defendant.

RAY, District Judge. The patent in question states in its specifications as follows:

"The present invention relates to sockets adapted to receive the bases of electric lamps or other translating devices, and to connect their terminals with a suitable supply circuit. The main object of the invention is to pro-

vide a simple and improved device of this character. The invention consists primarily in a socket having an insulating body, with an extension on which the terminals are mounted in the manner hereinafter set forth, and the invention consists also in the several combinations hereinafter described and claimed. In the accompanying drawings, Figure 1 is a partial section of a socket, having a base adapted to stand on a table, or to be secured to a wall or similar support; Fig. 2 is a plan view of the socket, with the inclosing shell removed; Fig. 3 is a plan view of the base, with the shell and the terminals removed; Fig. 4 is a view of a detail to be described; and Fig. 5 is a partial section of a socket, having a different outline, and adapted to be supported on a bracket or pipe, in a manner common in electric lighting systems. The socket to be described can be adapted for use in various situations and systems, but it will be described herein as adapted to stand on a table, and as adapted to be secured to a bracket or pipe, and to receive a lamp having terminals of the Edison type. In constructing the socket, I form an insulating base, 1, of rubber, porcelain, or other insulating material, having at the center an integral extension, 2, considerably smaller than the main part of the body, and when the socket is to be used as a stand or wall socket a circumferential rib or flange, 3. The extension, 2, is preferably provided on its outer face or end with a depression or ledge, 4, on which an inwardly bent flange, 5, on the bottom of the ring terminal, 6, rests, and said terminal is securely held in place by a U-shaped clamping piece, 7, which is adapted to rest on said flange, and to surround the central raised portion, 8, of the insulating extension. Screws 9 are passed through the base from the rear and into the clamping piece, to cause the same to clamp and hold the sleeve terminal. The piece, 7, is provided with an arm, 10, in which fits a binding screw, 11, by means of which one of the circuit wires, 12, can be secured to the sleeve terminal of the socket. At the center of the raised portion, 8, is preferably formed a depression, 13, of less depth than the depression around the outer edge, and in which the second socket terminal, 14, is adapted to rest, this terminal being secured in place by a screw passed through the insulating base from the rear. A single fastening screw is sufficient, since the terminal is prevented from turning by wall of insulating material around it. Said terminal is bent at right angles, and has a binding screw, 15, by means of which the outgoing wire, 16, of the circuit may be connected thereto. The under surface of the base is preferably provided with grooves, 17, through which the wires may pass to the holes, 18, through which the wires extend to the terminals; 19 are screw-holes, by means of which the socket base may be secured to any desired support; 20 is a sheet metal shell, which rests on the base just inside of the flange. 3; and 21 is a screw-threaded insulating ring surrounding the sleeve terminal, and fitting within the neck of said shell. This arrangement of parts not only gives an ornamental appearance to the socket, but braces and protects the sleeve terminal. By mounting the terminals, as described, it will be clear that they are fully insulated from each other, being separated on the face of the supporting body by a wall of insulating material, and the binding screws being on opposite sides of the extension, 2, and are very easily placed and secured in position. The particular outline of the central extension is not important, neither is it essential in all cases that depressions for the terminals of the socket should be formed in the end of the support in the manner described. In Fig. 5, the insulating base is much smaller than in Figs. 1, 2, and 3, but is larger than the extension, and is supported in a sheet metal shell. having a neck; 22, adapted to screw onto a bracket or pipe. The shell extends from the circumference of the body, and is therefore separated by a considerable distance from the extension and terminals supported thereon. The extension, 2, is formed in substantially the same manner as above described. This figure shows the inwardly turned flange, 5, on the sleeve terminal, with the clamping piece, 7, resting on the same; this view being taken from the opposite side of a socket to that shown in Fig. 1. This view also shows more clearly than the other views the manner in which the terminals are separated by the insulating material of the extension 2."

The claims in issue (5, 6, and 7) read as follows:

"(5) The combination in a socket of an insulating base or body, a sleeve terminal having an inwardly bent flange or projection resting on a part of said insulating body, a clamping piece adapted to fit over said flange, and a screw or similar device passing through the insulating body and clamping piece, and means for securing the circuit terminal to said clamping piece, and through it to the sleeve terminal, substantially as described.

"(6) The combination of the insulating standard having a ledge around a central U-shaped portion, a sleeve terminal having a flange resting on said ledge, and a U-shaped clamping piece on said flange, substantially as described.

"(7) The combination in a socket of an insulating body, a sleeve terminal provided with an inwardly extending flange, a central terminal, and a curved clamping piece on said flange around the central terminal, substantially as described."

It will be noted that the patent calls attention to two forms in which the invention may be employed to advantage. The one comprises a structure in which the insulating foundation is provided with an extension upon which the metallic parts are secured, while the other comprises a structure in which the insulating foundation has no such extension, but the metallic parts are mounted thereon directly. The first four claims of this patent refer to the form first mentioned, where the insulating foundation is provided with an extension upon which the metallic parts are secured, while the three claims in issue are based upon the second form mentioned, in which this extension is dispensed with, and the metallic parts are mounted directly upon the insulating body. The patent also describes and illustrates the invention as applied to a no-key socket, ordinarily adapted to co-act with a chandelier or its equivalent, and to a receptacle usually adapted to be attached to the wall. Therefore, the sockets and receptacles mentioned in the patent are essentially the same, the difference being chiefly in the shape or design of the insulating foundation. The complainant contends that the description in the patent refers to two important features, which, apart from the metallic parts, distinguish this structure broadly from the structures theretofore employed. The complainant contends that the first of these features concerns the use of an insulating base or body or standard, by which is meant insulating material of abundant mass as distinguished from the insulating material of disk form, which characterized the single disk and the double disk sockets of the prior stages in the evolution of the art. The complainant also contends that the second feature concerns the electrically and mechanically separating the two socket terminals of opposite polarity by the use of a wall of insulating material, preventing those oppositely charged terminals from becoming electrically connected, either by the mechanical shifting of their positions, or by an intervening bridge, as of moisture. Claims 5, 6, and 7 are alleged to be drawn upon the second form, in which the invention may be employed as referred to in the two first paragraphs of the specifications above quoted. The contention is that the claims in issue cover an insulating base or body having mounted thereon a screw shell or sleeve terminal, provided with an inwardly bent flange, a U-shaped clamping piece fitting over such flange, screws for securing the clamp-

ing piece, and the sleeve terminal as a necessary consequence to the insulating body, and means for conducting current to the clamping piece and sleeve terminal.

I will not take the time to discuss the question of the validity of claims 5 and 7 of the patent in suit. Presumptively they are valid, and I do not find sufficient evidence in the record and the prior art, after a full and careful consideration of the same, to overcome this presumption, and the finding therefore is that claims 5 and 7 of the patent in issue are valid.

The more serious and difficult question involved in this suit is, does the defendant infringe? In arriving at a satisfactory conclusion on the question of infringement, it is necessary, however, to examine the patent with care. If a pioneer, and entitled to a broad construction accordingly, it is entitled to the application of equivalents in the broad and comprehensive sense.

Claim 5 is a combination claim, with the following elements: In a socket (1) an insulting base or body; (2) a sleeve terminal having (a) an inwardly bent flange or projection resting (b) on a part of said insulating body; (3) a clamping piece adapted to fit over said flange; (4) a screw or a similar device passing through (a) the insulating body, and (b) the clamping piece; and (5) and lastly, means for securing the circuit terminal (a) to said clamping piece, and (b) through it to the sleeve terminal, substantially as described.

Claim 6 consists of the following elements in combination: (1) the insulating standard, having (a) a ledge around a central U-shaped portion; (2) a sleeve terminal, having a flange resting on said ledge; and (3) a U-shaped clamping piece on said flange, substantially as described.

Claim 7 has in combination the following elements: In a socket (1) an insulating body; (2) a sleeve terminal provided with an inwardly extending flange; (3) a central terminal; and (4) a curved clamping piece on said flange around the central terminal, substantially as described.

While claim 6 speaks of "the insulating standard," I assume that the insulating base or body is meant, and whether we use the insulating body of one mass suitably fashioned, or that having an extension or raised portion, upon which the metallic parts are mounted, I discover no substantial difference in the principle involved.

I fail to discover in either the claims or specifications of the patent in suit any reference to an abundant mass of insulating material as distinguished from the disks of insulating material employed in the former art, and I cannot see that any particular importance can be given it, as in the prior art, in the patent No. 251,596, "socket or holder for electric lamps," issued to Edward H. Johnson in 1881, we have an abundant mass of insulating material of wood, and the same is true of the Bergmann patent of 1882, No. 257,277, socket for incandescent lamps. In 1885 Bergmann took out another patent for socket for incandescent lamps, No. 311,100, date of January 20, 1885, and he says:

"My object is to provide a socket of this kind which shall be compact and of as few parts as possible, in which the amount of insulating material used shall be very small, and which shall contain a simple and effective form of circuit controller."

And he also says:

"The socket constructed as described * * * has no useless mass of insulating material, being merely a metal skeleton, with just enough insulation to separate the terminals, all the circuit connections being carried by the single insulating-disk, instead of being divided among two or more insulating portions, as heretofore."

The effort of Bergmann seems to have been to get away from the abundant or superabundant mass of insulating material of the prior art. This is not mentioned as showing anticipation of the patent in suit, but as showing there is nothing new or novel in the use of an abundant mass of insulating material. The question was how to make a neat, compact, light, durable, safe, cheap, and efficient socket, avoiding the dangers of cross-circuiting, etc. Metzger filed his application for the patent in suit in April, 1892, and had the prior art before him, as he is presumed to have been thoroughly conversant therewith. In fact, the patentee (Metzger) says:

"The invention consists primarily in a socket having an insulating body [old] with an extension on which the terminals are mounted in the manner hereinafter set forth; and (2) the invention consists also in the several combinations hereinafter described and claimed."

I can discover no novelty amounting to invention in a mass of insulating material, with one part or portion thereof raised or elevated for convenience and utility in mounting theron or attaching thereto the other parts of the socket. The invention resides in the mode and manner of attaching the various parts to this central mass of insulating material, or rather the novel and efficient way of arranging them, with reference to each other, so as to accomplish the main purpose. This involved some cutting or rather molding of the insulating material to adapt it to the use intended. Each and every element of each of these claims is old, had been used in the prior art, or at least plainly and distinctly suggested by it, the form or shape and size being changed, but in no way that suggests invention. I think, therefore, the claims of the patent in determining the question of infringement must be limited accordingly in applying the doctrine of equivalents. For convenience in giving a description of the complainant's construction in accordance with the patent in suit, and also of defendant's alleged infringing construction, we will assume that the body of insulating material stands on end before us. We will then speak of the upper end as the one on which the inwardly bent flange on the bottom of the ring terminal rests. Assuming this body of insulation to be first cut or molded, to correspond in shape with the ring terminal—that is, cylindrical—on opposite sides thereof a small portion is cut away from top to bottom to permit the attachment thereto of the arm, 10, of the U-shaped clamping piece, 7, and its binding screw, 11, on the side of the body, and of the second socket terminal, 14, which is bent at right angles so that one-half of its

length, about, rests on top of, or the upper end of, the insulating body, and the other half on the side thereof, and its binding screw, 15, on the side of the body, without their extending out laterally further than the side of the ring terminal. One part of this second socket terminal rests on a part of the upper end of the body, which is made U-shaped, and is higher than the remaining part of the upper end, and made so by cutting (or molding) away a part of the upper end to receive the flange of the ring terminal, and the U-shaped clamping piece resting thereon, the clamping piece above the flange, of course. This cut away portion corresponds in shape and size with the clamping piece, aside from its arm, 10. This cutting away of a portion of the upper end of the insulating body forms what is called in the patent in suit "a ledge," and it is on this so-called "ledge" that the flange of the "ring terminal" rests, and on which flange the U-shaped clamping piece rests. The U-shaped clamping piece, 7, and, consequently, the ring terminal, 6, and the second socket terminal, 14, are held securely in place by means of screws coming through the insulating body from the bottom thereof. These holding screws are distinct from the binding screws, 11 and 15, to which the wires are attached. Attach the wires to the heads of these binding screws, which are on opposite sides of the insulating body, and we have the complainant's socket. In this way the second socket terminal is raised above the clamping piece, 7, holding the sleeve or ring terminal by means of its flange, and, when this second socket terminal is sunk into the raised U-shaped part of the insulating body (a preferable mode of construction) it is separated from the U-shaped clamping piece and the flanges of the ring terminal by a wall of insulating material. Of course, this whole structure may be inclosed in a receptacle or hollow body of insulating material, made integral with the insulating body, before described. Possibly it should be mentioned that the ring terminal is cut away on opposite sides thereof where the binding screws to which the wires are attached are respectively located. Also, this ledge is a preferential construction or formation, as is the depression to receive the second socket terminal. Now what has the defendant done? (1) It has the same ring terminal with flanges and one cut away portion only, but this is not material. It was old in the art. (2) It has the mass or body of insulating material cut or molded to conform in shape to the ring terminal; that is, cylindrical. Old and known to the prior art and to everybody. (3) It has the flanges of the ring terminal resting on the upper end of the insulating body, and held down to it by a U-shaped clamping piece adapted to rest thereon. But this clamping piece is of the "short-horned" variety, and not adapted to surround the raised portion of the insulating body, which raised portion is found in defendant's construction, to the extent the clamping piece of complainant's patent does. In fact it "surrounds it" on one side only, while complainant's clamping piece surrounds his "raised portion" on three sides. This clamping piece is held in position, not by two screws coming through the insulating body from the bottom or lower end thereof, as in complainant's, but by one screw only (a hollow

one), which performs an additional function, described later. This U-shaped clamping piece does not have the arm, 10, or the binding screw, 11, but in lieu thereof makes connection with the corresponding circuit wire by means of a long sharp-pointed screw passing through the barrel of the hollow screw before mentioned, and consequently through the insulating body and into a metal washer, to which washer is attached the proper circuit wire, and the lower end of this hollow screw and the washer holding the circuit wire may be seated in the lower part of the body of the insulating material, or in an added body of insulating material. The other, or second, socket terminal is seated on a raised portion of the upper or top end of the insulating body, not exactly like complainant's, but sufficiently similar, but this second terminal is not bent at right angles, and has no binding screw to receive and hold the other, or, as complainant's patent calls it, "outgoing wire 16 of the circuit." It is wholly on the top of this raised part of the upper end of the insulating material, and is held in place by a hollow screw passing to the lower end of the insulating body. It makes contact with this "outgoing wire" of the circuit by means of a long sharp-pointed screw passing through the hollow screw, as before described, and connected with the other wire in the same manner as does the other long pointed screw before mentioned. This is defendant's socket. The substantial differences are in the shape of the U-shaped clamping pieces and of the "second socket terminals," and in the mode and manner of making connection with the respective wires of the terminals. Are these substantial equivalents?

Unless the specifications of the patent in suit limit the scope of claim 5 as it reads, the defendant's socket reads upon this claim. The specifications of a patent may limit the claims made, or they may, in a sense and to a degree, enlarge or broaden the meaning to be given the terms employed therein. The shape and form of devices of this character are of little consequence unless such shape and form enable the element described to perform some office or function it could not perform but for such shape. In complainant's patent the U-shaped clamping piece, 7, is secured to the insulating body by the two independent screws, while in defendant's socket it is secured thereto by one only, and this is hollow. I regard this as immaterial, as the office or function of the one, so far, is the same as that of the two. But this U-shaped clamping piece of the defendant's socket has no arm at all, and no binding screw fits therein to hold or attach to the wire of the circuit. For this is substituted the long pointed screw which connects with the wire below the body of insulating material or in its lower end, and this screw passes through the single hollow screw which fastens or holds the clamping piece on the flange of the ring terminal, and also to the body of insulation, but it binds on the U-shaped clamping piece, and in fact connects, although not directly, the wire to the clamping piece. The washer is added to the wire, and the lower end of the hollow screw seems to have a washer integral with it at its lower end, and the two washers are brought into immediate contact on their flat broad surfaces. In short, the method and

146 F.—35

mechanical device for connecting the ring terminal and clamping piece with the wire and its location on the insulating body is changed. That the one is the electrical equivalent of the other cannot be doubted. The electrical office or function of the one is the same as that of the other, and the general arrangement of the terminals with respect to each other and to the avoidance of cross-circuiting is the same. Mechanically, there is more to this mechanism of defendant than to complainant's, but in this device they serve the same precise purpose—to connect the wire to the clamping piece, flange, and consequently the ring terminal, and hold it in position, separated from the other or second terminal attached to or connected with "the outgoing wire," so-called, in the specifications of complainant's patent. Treating the hollow screw as an arm of the clamping piece, although it is not integral with it, and the long pointed screw passing through it and screwing into the washer attached to the wire as a binding screw, to which the wire is attached, and we have a device "by means of which one of the circuit wires, 12, can be secured to the sleeve terminal of the socket," and, in the broad language of claim 5, "means for securing the circuit terminal to said clamping piece, and through it to the sleeve terminal." Is it, as a whole, "substantially as described"? As a whole, it dispenses with one of the screws of the patented device, not an element of the claim, and also with the arm, 10, integral with it, but it substitutes the long pointed screw and two washers, one of which is, in one construction at least, integral with the hollow screw and the other attached to the wire.

It seems to me that when changes are made substantial equivalents are used, and that in the sense of the patent law the two sockets perform the same functions, with substantially the same means, in substantially the same way. Each does the same thing, in the same way, with substantially the same combination of devices or elements arranged in substantially the same way, making one complete device, to wit, an electric lamp socket, adapted to receive the bases of electric lamps or other translating devices, and to connect their terminals with a suitable supply circuit. I find no element of claim 5 of the patent in suit omitted in defendant's socket, and I think the combination and arrangement of the several parts are substantially the same in every material respect. Change of form in the elements does not avoid infringement, and the words of claim 5, "substantially as described," seem fully to warrant the changes described in "means for securing the circuit terminal to said clamping piece, and through it to the sleeve terminal," and also the other changes mentioned in making complainant's device in accordance with, and within the terms of, the patent in suit. While it is true that every part of a combination claimed is presumed to be material thereto, and that a combination is an entirety, and that if one element is omitted the claim disappears unless a substantial equivalent is substituted, and such substitution is permissible in the particular case, still I think that the language of the specifications of the patent in suit has not limited the claims to the particular forms mentioned, and that it was not necessary to claim equivalents in the claims themselves, or mention them in the

specifications. "The patentee, having described his invention and shown its principles, and claimed it in that form which most perfectly embodies it, is, in contemplation of law, deemed to claim every form in which his invention may be copied unless he manifests an intention to disclaim some of those forms," which, of course, he may do, in certain cases, by mentioning in his claim one particular thing as contradistinguished from all others of the kind.   Walker on Patents (4th Ed.) § 363, says:

"Sec. 363. A change of form does not avoid an infringement of a patent unless the form shown in the patent is necessary to the functions which the patent ascribes to the invention, or unless that form is the distinguishing characteristic of the invention, or is essential to its patentability, or unless the patentee specifies a particular form as the means by which the effect of the invention is produced, or otherwise confines himself to a particular form of what he describes. Even where a change of form somewhat modifies the construction, the action, or the utility of a patented thing, noninfringement will seldom result from such a change."

In determining the validity of claim 7 of the patent in suit and the question of infringement thereof, we are to determine the meaning of the words "around the central terminal" in the light of the language of the specifications and a view of the drawings. Clearly, it is not intended that the curved clamping piece shall completely encircle the central terminal, for such a piece is not shown or described. A person may be "around" a house, inside or outside, without encircling it or going all around it. The word "around" means, primarily, "in a circle or sphere; round about"; secondarily "from place to place; here and there; about; as to travel around from city to city"; third, "about; near; as he waited around till the fight was over." Claim 7 calls for a curved clamping piece fixed and near to, and partially encircling, the central terminal; not one moving about from place to place. The defendant has such a clamping piece, but it is curved to a lesser extent or degree than the one show in the specifications of the patent, and, as before stated, does not inclose this terminal on more than one side. Defendant has a "sleeve terminal" or "ring terminal," and this has an inwardly extending flange, also a central terminal and an insulating body—all the substantial equivalents of the same elements in complainant's patent in suit.

It seems to me clear that the changes in this case in defendant's socket are not as great or as wide a departure from the claims read in the light of the specifications as were those of the defendant in Cash Register Co. v. Cash Indicator Co., 156 U. S. 502 (page 516) 15 Sup. Ct. 434, 39 L. Ed. 511, where infringement was held to be established. It is often very difficult to draw lines of distinction. In Westinghouse v. Boyden Power Brake Co., 170 U. S. 568–569, 18 Sup. Ct. 722, 723 (42 L. Ed. 1136) the court said:

"But even if it be conceded that the Boyden device corresponds with the letter of the Westinghouse claims, that does not settle conclusively the question of infringement. We have repeatedly held that a charge of infringement is sometimes made out, though the letter of the claims be avoided. Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Ives v. Hamilton, 92 U. S. 426, 431, 23 L. Ed. 494; Morey v. Lockwood, 8 Wall. 230, 19 L. Ed. 339; Elizabeth v. Pavement Company, 97 U. S. 126, 137, 24 L. Ed. 1000; Sessions v. Romadka,

145 U. S. 29, 12 Sup: Ct. 799, 36 L. Ed. 609; Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, 36 L. Ed. 713. The converse is equally true. The patentee may bring the defendant within the letter of his claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted, when he has done nothing in conflict with its spirit and intent. 'An infringement,' says Mr. Justice Grier in Burr v. Duryee. 1 Wall. 531, 572, 17 L. Ed. 650, 660, 661, 'involves substantial identity, whether that identity be described by the terms, "same principle," same "modus operandi," or any other. * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term "equivalent." ' We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional, and the defendant's device differs from that of the patentee only in form, or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reached the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there. As was said in Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650, 660, 661, an infringement 'is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are therefore mere equivalents for those of the other.' "

I do not think that defendant has avoided even the letter of claims 5 and 7 of the patent in suit, or the letter of the claims read in the light of, and modified and restricted by, the specifications and drawings. The conclusion is that claims 5 and 7 of the patent in suit are not only valid, but infringed by the defendant.

As to claim 6, which has in combination (1) the insulating standard described, having a ledge around a central U-shaped portion thereof, and (2) a sleeve terminal having a flange resting on said ledge, and (3) a U-shaped clamping piece on said flange, I fail to find invention in view of the prior art. Such a body of material cut away to form a U-shaped ledge wholly or partially around a raised central portion presents no novelty in or outside the art to which this patent relates. This ledge is mentioned in the specifications as a preferential form of construction merely. It is a form of construction that would occur to any one of moderate skill in this art or in the trade of carpentry, and is old in all arts where such a form of construction is desirable. Sleeve terminals having flanges turned inwardly or outwardly were not only old in the art, but would occur to any skilled mechanic who desired to seat them on such a body of

material as has been mentioned. A U-shaped clamping piece—that is, a curved clamping piece—is not only old in this art, but in all arts where clamping pieces are used. Such a form of clamping piece for such a purpose as is described in the specifications and placed on such a ledge above the flange, and resting thereon and fastened to the body of the insulating material by screws or similar devices, would occur to any one skilled in this or any other art involving mechanical skill or discernment. I cannot find invention disclosed in this claim, and hold it invalid.

There will be a decree that claims 5 and 7 of the patent in suit are valid and infringed by defendant, and that claim 6 thereof is void.